# In the Court of Quarter Sessions of Schuylkill County.

In the matter of the petition of Sundry Citizens of CASS TOWNSHIP, contesting the Township election held on the 17th of February, 1874.

A contest involving the election of different persons to different offices cannot be raised by a single petition. There must be separate petitions for each office that may be contested.

An election held at the proper time and place and by the regularly chosen officers will not be set aside, although fraudulent votes may have been received. The remedy in such case is to purge the polls by striking out the fraudulent votes, if possible.

**Motion to quash the above petition.**

Opinion delivered Nov. 2, 1874, by

GREEN, J. The petition of citizens of the Township of Cass, sets forth *inter alia* that the election officers of that township have returned, that, James Hughes had been elected supervisor, James O'Maley, treasurer, and James Moore and Patrick Derrick, school directors at the last election and that these returns were untrue and false. It further sets forth that in point of fact, James Carney was the legally elected supervisor, and not James Hughes, that Thomas Ryan was duly elected treasurer, and not James O'Maley, and that Patrick Kelly and William Shartle were duly elected school directors and not James Moore and Patrick Derrick, having received a majority of the legal votes cast at said election. A number of specifications, charging irregularities, in the manner of conducting the election, in the receiving of illegal votes and the rejection of legal votes to an extent sufficient to change the result, are given, setting forth in detail the facts relied upon to maintain the issues raised.

The petition is signed by upwards of twenty persons, and it sets forth that they are qualified electors of the said township. The affidavit of two of the petitioners, Hugh Connery and Michael Brennan, accompanies the petition and they swear that the facts set forth are true to the best of their knowledge and belief. The petition was presented and filed on the 24th February 1874.

On the 9th of March following an amended petition was filed: This petition raised a contest as to the election of Alexander McDonald and Thomas Dormer who had been returned as auditors, and of James McKeown who had been returned as town clerk, and set forth that Daniel Brennan and William Foyle were duly elected auditors, and Henry Eastcock, town clerk, they having received a majority of the legal votes for said offices, respectively.

On the 11th of May following a second amended petition was filed. This petition is silent as to any contest for auditors and town clerk, and confines the question to the issues raised in the first petition—that is—as

to the offices of supervisor, treasurer and school directors. The specifications are ten in number, and do not vary substantially from the specifications in the preceeding petitions.

The defendants have moved to quash the petiton upon various grounds, the principal one being that one petition cannot raise a contest involving the election of different persons to different offices—that there must be separate petitions for each office that may be contested. This objection if sustained is fatal to the petition.

Upon reason and the well recognized principles of law, this objection seems to me to be well founded. A contest in one and the same proceeding for two or more offices, raises separate and distinct issues, between different parties having no connection with each other, and for offices which are entirely independent of each other. The facts which may be proven to decide the issue in one case may be of an entirely different character from the facts proven in the other. The judgment in the one case might be entirely different from the judgment in the other, and the proper disposition of the costs difficult to determine in such an event. Such a joinder of actions between different parties would be unheard of, and contrary to all the analogies of the law.

But it may be said, the proceeding to contest an election is entirely the creature of statute law. Does the statute authorize the joinder of these different issues in one proceeding? The 153rd and 154th sections of the act of 2nd July, 1839, provide the method of procedure in the case of a contested election and read as follows: Sec. 153. "The several courts of quarter sessions shall have jurisdiction to hear and determine all cases in which the election of *any county or township officer* by the citizens in the respective county may be contested." Sec. 154. "Upon the petition in writing of at least twenty qualified electors of the proper county or township, as the case may be, complaining of an undue election or false return of *any such officer*, the court shall appoint a suitable time for hearing such complaint, notice of which shall be given *to the person returned*, at least ten days before such hearing: Provided, &c."

It is very evident from the language of the act, that a contest only as to a single office, and not as to two or more is contemplated. We have already seen that the general spirit and principles of the law do not require us to enlarge its letter so as to make it embrace three or more contests for as many different offices. The books show many cases of contested elections, but I have found none where more than one contest was waged in a single proceeding. It may be further worthy of remark that the new election law passed the 19th of May, 1874, also excludes the idea that there can be a proceeding, in which more than one office is contested in the same petition. The 18th Section of the Act directs that "notice of the filing of the petition with a copy thereof shall be served upon *the person whose right of office shall be contested.*"

The complainants, realizing the force of this objection, claim that, at all events, under the petition, the Court has the power, after hearing, to set aside the election, and to declare, that none of the persons voted for, are entitled to hold the offices. That such a power exists is established by many decisions, but the circumstances under which it may be exercised, may be somewhat more difficult to determine. What might be good cause for deciding an election in favor of a contestant, would not be necessarily good ground for setting an election aside and creating a vacancy Where an election is regularly held by legally chosen officers at the place and time fixed by law, it would not be set aside even though many irregularities may have been committed, and enough illegal votes received to have changed the result of the election, if it had been conducted fairly. For the election itself is legal, even though the person returned may not be the legally elected officer. I find but few instances of the setting aside of an election, but they serve to illustrate the principle. In the case of "The Penn District Election, 2 Parsons, 526"—the prayer of the petition was to set aside an election, at which a number of officers had been returned as elected, for the reason that the polls had been closed several hours earlier than the hour prescribed by law. As this deprived the legal voters of the opportunity of exercising the right of suffrage, the election was declared illegal and was set aside. So also in the case of The Locust Ward Election, 3 Penn'a. L. J. 341, where the polls had been kept open for some time after the legal hour of closing, and votes enough had been polled after the proper hour to have possibly changed the result, then the election was set aside as not legal. Those voting after the proper hours lost their opportunity, and by receiving their votes it rendered the election just as null as if they had been permitted to cast them on the following day. In Melvins case 18 P. F. Smith, 333, it is decided that " if an election be held at a place not fixed by law the returns should be stricken out by the return judges" and that "a whole election district may be stricken out on showing an entire disregard of conformity to the law in holding it, either by design or ignorance," and "where an election was not opened till 2 o'clock P. M., the law requiring it to be opened between 6 and 7 o'clock A. M. the return should be rejected." Says Thompson, C. J. in this case. "The last (that is that no election was legally held) we hold is what occurred here, to-wit: that no election was legally held in the districts mentioned in the complaint of the petitioners. The doctrine of striking out entire divisions was held by the Common Pleas in that case and in Batturs vs. Megary, 1 Brews, 162, in which we are referred to a decision in 1859 by Judge Taylor, in Blair county, to the same effect. In my opinion, however, this ought never to be done where a legal election as to the time and place is held, although fraudulent votes shall have

been received.    The remedy in such a case is to purge the polls by striking out the fraudulent votes if possible.'.'

Following the principles indicated in these decisions it is very evident that neither the original petition in the present case nor the amended ones set forth sufficient grounds for setting this election aside.  For aught that is alleged to the contrary, the election was entirely legal.    It was held at the proper time and place and by the regularly chosen officers.  It is true that the power of the Court to strike out election returns would seem to be wider in its exercise than the opinion of Justice Thompson would indicate.    In the contested election cases of 1867, in Philadelphia, 1 Brewster 162, various election divisions were striken out, not because there was no legal election as to time and place and as to the officers by whom it was held, but because the irregularities and frauds were so great that it was impossible to ascertain the true vote.    "Divisions in which the law has been entirely disregarded should be stricken out, and the case referred back to allow each party to prove his legal vote.    Per Allison, P. J., and Pierce, J."    "The Court have the power to reject an entire poll, but only in the extremest case as where it is impossible to ascertain the true vote.    Impossibility is the test.    Per Brewster, J."    But even though whole divisions were thrown out in these cases and also in others, in none was the election set aside.    It was not decided that there was no election, or that there was a vacancy in the office.    The issue in the cases was not whether the election should be set aside, but who was the person legally elected, the contestant or the respondent, and for the purpose of deciding that issue properly, it was the unanimous opinion that the proper course would be to throw out those divisions, and to refer the case back to allow each party to prove his legal vote.

The real issues in the present case, raised by the petition and its amendments are the same as in the several Philadelphia cases referred to. If all the allegations contained in the petitions were true, it would not warrant the setting aside of the election as claimed by the petitioners, for the reasons I have already stated.    Setting an election aside is one thing, striking out an election division and referring a case back to ascertain the true vote, is an entirely different thing.  I have therefore come to the conclusion that this petition must be quashed.

But I am free to acknowledge that I have felt a certain degree of reluctance in coming to this conclusion.  I regard crimes against the ballot box as offences of the most serious character, because they strike at the root of republican institutions.  The greatest vigilance should be exercised in detecting and bringing to punishment, those who are guilty of committing them.    If we are indifferent to their commission, an l allow them to go unpunished, we will soon become the prey of the thief and the public plunderer.    Our condition would become most deplorable,

like that of those other communities, where crimes of this character seem to be of common occurrence, because committed with impunity. I feel free to say, that if the evidence upon hearing in the present case had shown the fact that the officers of the election had wilfully and fraudulently violated the law, I should have had no hesitation in holding them to answer for their crime at the bar of criminal justice.

Other reasons have been urged for the quashing of the petition, but under the views taken, it does not become necessary to dwell upon them, or decide them.

Petition quashed.